**UNITED STATES of America, Plaintiff,**

**v.**

**CONTENTS OF ACCOUNT NUMBERS 208–06070 AND 208–06068–1–2, in the Names of Olimpia Concepcion and Christopher Matos at Gruntal & Co.; Contents of Account Numbers 29–3008339–5 and 29–3009142–2, in the Names of Christopher Matos and Olympia Concepcion at Emigrant Savings Bank; Contents of Account Number 4630016195, in the Names of Olimpia Concepcion and Christopher Matos at Citibank, N.A.; Contents of Account Number 30–702215–5, in the Names of Christopher Matos and Olimpia Concepcion, at Providence Savings; Contents of Account Numbers 70–33–071120, 70–33–00569781, and 703320, in the Names of Christopher Matos and Barbara Matos at Dominion Bank; Contents of Account Numbers 01055461 and 40594831, in the Names of Christopher Matos and/or Barbara Matos at First Virginia Bank; Contents of Account Number 14–730–928, in the Names of Christopher Matos and/or Barbara Matos at Riggs; Contents of Account Number 1505042 in the Names of Christopher Matos and/or Barbara Matos, at Riggs National Bank of Washington, D.C.; all Right, Title, and Interest in Real Property Known as 12211 Wye Oak Common Circle (Unit 64), Burke, Virginia; all Right, Title, and Interest in Real Property Known as 1089 Avenue K (Unit 22), Brooklyn, New York; Assorted Jewelry Valued at $19,540.00; Certificate of Deposit # 7000143955, in the Amount of $2,000.00 at First Virginia, 6400 Arlington Blvd.,**

Falls Church, Virginia; Certificate of Deposit # 146028, in the Amount of $24,-000.00 at Dominion Bank, Roanoke, Virginia; Certificate of Deposit # 146029, in the Amount of $8,000.00 at Dominion Bank, Roanoke, Virginia; American Express Travelers Cheques Totalling $1,300.00; $750.00 in United States Savings Bonds; $68,400.00 in United States Currency, Defendants-in-rem.

No. 90 Civ. 5551 (MGC).

United States District Court,
S.D. New York.

March 31, 1994.

Mary Jo White, U.S. Atty., S.D.N.Y. New York City by Treby McL. Williams, for plaintiff.

Christopher Matos, pro se.

### MEMORANDUM OPINION AND ORDER

CEDARBAUM, District Judge.

The government commenced this action, pursuant to 18 U.S.C. § 981, seeking forfeiture of the contents of various bank accounts, certificates of deposit, U.S. currency, and certain real and personal property as property involved in money laundering transactions or as property traceable thereto. Christopher Matos, who is currently incarcerated, filed a Notice of Claim to all properties listed in the amended complaint. Barbara Matos, Matos' wife, and Olimpia Concepcion, his mother, also filed Notices of Claim. Pursuant to a Stipulation and Order signed February 18, 1993 and two Stipulations and Orders signed February 25, 1993, the claims of Barbara Matos and Olimpia Concepcion were settled and dismissed with prejudice. In addition, the government withdrew its amended complaint against all property except the contents of twelve of the bank accounts and certificates of deposit and $68,400 in U.S. currency.

The government now moves for partial summary judgment against the contents of eight of the twelve accounts that remain in this action. With respect to six of the eight accounts, the government asserts that there is probable cause to believe that the contents of these accounts are forfeitable pursuant to 18 U.S.C. § 981 as property that was involved in money laundering in violation of 18 U.S.C. § 1956, or as property traceable thereto.

With respect to the other two accounts, the government asserts that Matos, the only remaining claimant, lacks standing to challenge these forfeitures because the accounts are in his wife's name only, and he has not submitted an affidavit establishing his interest. In addition, the government argues that even if Matos could establish standing to challenge these last two accounts, the contents of one of these accounts is still subject to forfeiture as property traceable to property involved in money laundering transactions in violation of 18 U.S.C. § 1956.

For the reasons discussed below, the government's motion for partial summary judgment is granted against the contents of the six accounts as property involved in money laundering transactions, as well as against the contents of the seventh account, as property traceable to property involved in money laundering transactions. However, summary judgment is denied against the contents of the eighth account because there remains a genuine issue of material fact regarding Matos' standing to challenge this forfeiture.

### Background

Matos was employed by the Immigration and Naturalization Service from 1985 through May 1990. From sometime in 1986 through May 1990, Matos and others accept-

ed bribes in exchange for fraudulently issuing alien registration receipt cards ("green cards"). (Answer to Am.Compl. ¶ 5; Williams Decl. ¶ 4.) Matos always received these bribes in cash and would then transfer the money to his home in Virginia. (Matos Dep. at 75, 99.)

From October 1987 through December 31, 1989, Matos deposited the proceeds of this green card scheme in various bank accounts controlled by Matos, his wife, or by Matos, jointly with his wife or mother. (Williams Decl. ¶ 8; Matos Plea at 15–16; Matos Dep. at 50, 54–57, 59–61, 64–66, 72–74, 77.) From 1986 through 1989, Matos maintained between seven and seventeen accounts at various banks and made numerous deposits of cash and cashiers checks, totalling at least $61,594 in 1986; $84,500 in 1987; $259,298.86 in 1988; and $116,257.77 in 1989. (Macchiaroli Aff. ¶¶ 6, 33.) The six accounts that the government contends contain property involved in money laundering transactions were opened in the years 1987, 1988 and 1989. (Id. ¶¶ 7, 10, 15, 19, 21, 24.)

On December 12, 1990 Matos pleaded guilty to conspiring to accept bribes and issue fraudulent green cards in violation of 18 U.S.C. §§ 201(b)(2)(B) & 1028(a)(2). In addition, Matos pleaded guilty to engaging in money laundering transactions from October 1987 through December 31, 1989 in violation of 18 U.S.C. §§ 1956(a)(1)(A)(ii) & (a)(1)(B)(i).

The six accounts against which the government seeks summary judgment as property involved in money laundering transactions are as follows: Citibank, N.A. account number 4630016195, held in the names of Christopher Matos and Olimpia Concepcion, from which approximately $82,000.00 was seized (Macchiaroli Aff. ¶ 7); Emigrant Savings Bank account number 29–3008339–5, held in the names of Cristobal Matos or Olimpia Concepcion, from which $11,240.80 was seized (Id. ¶ 10); Emigrant Savings Bank account number 29–3009142–2, held in the names of Cristobal Matos or Olimpia Concepcion, from which $18,477.93 was seized (Id. ¶ 15); Gruntal & Company account number 208–06070, held in the names of Christopher Matos and Olimpia Concepcion from which

$47,672.00 was seized (Id. ¶ 19); First Virginia Bank account number 01055461, held in the names of Christopher and Barbara Matos, from which $28,907.41 was seized (Id. ¶ 21); and Riggs National Bank of Virginia account number 14–730–928, held in the names of Christopher and Barbara Matos, from which $37,639.05 was seized (Id. ¶ 24) (hereinafter "the Six Accounts").

The two accounts as to which the government contends Matos lacks standing to challenge forfeiture are: First Virginia Bank account number 40594831 ("First Virginia 31 Account"), held in the name of Barbara Matos, from which $36,020.95 was seized (Id. ¶ 29); and First Virginia Bank account number 7000143955 ("First Virginia 55 Account"), held in the name of Barbara Matos, from which $2,983.64 was seized. (Id. ¶ 27.) The government also argues that the contents of the First Virginia 31 Account are subject to summary judgment on the additional ground that they are traceable to property involved in money laundering transactions.

During his sentencing proceedings, Matos, through his attorney, withdrew his request for a hearing to determine the exact amount of money involved in his money laundering offenses and agreed to a four-point enhancement under the Sentencing Guidelines, which is appropriate when the amount of money involved exceeds $600,000. (Williams Aff. Ex.C, at 12.) However, in his Answer, Matos states that the forfeiture should be limited to the amount of $188,000, which he claims represents all the proceeds from his green card scheme.

## Discussion

Summary judgment is authorized when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "As to the materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under

the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In examining the record, the court "must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party." *Gibson v. American Broadcasting Cos., Inc.*, 892 F.2d 1128, 1132 (2d Cir.1989); *see also Celotex*, 477 U.S. at 330 n. 2, 106 S.Ct. at 2556 n. 2.

Section 981 of Title 18 subjects to forfeiture "[a]ny property real or personal, involved in a transaction or attempted transaction in violation of ... section 1956 ... of this title, or any property traceable to such property." 18 U.S.C. § 981(a)(1)(A) (1988 & Supp. IV 1992).[1] Section 1956, in turn, imposes a criminal penalty on any individual who:

> (a)(1) ... knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—(A)(i) with the intent to promote the carrying on of specified unlawful activity; or ... (B) knowing that the transaction is designed in whole or in part—(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity....

18 U.S.C. § 1956(a)(1)(A)(i) & (B)(i) (1988 & Supp. IV 1992). A "transaction" includes, among other things, a deposit, withdrawal, transfer between accounts, or purchase of any certificate of deposit. 18 U.S.C. § 1956(c)(3).

### A. *Matos' Standing*

■ As an initial matter, Matos' standing to challenge the forfeiture must be determined. To establish standing, Matos must demonstrate a possessory or ownership interest in the contents of the accounts, which may be proven by actual possession, dominion, control, title, or financial stake. *United States v. One 1982 Porsche 928*, 732 F.Supp. 447, 451 (S.D.N.Y.1990); *see also Mercado v. U.S. Customs Service*, 873 F.2d 641, 644 (2d Cir.1989). The government does not challenge Matos' standing to contest the forfeiture of the Six Accounts, which are held in his name. However, First Virginia 55 and First Virginia 31 are held in his wife's name only, and the government contends that he has not raised a genuine issue of material fact regarding his interest in these accounts.

■ In response to the government's Rule 3(g) statement, Matos states that "Christopher Matos and his wife, Barbara Matos ... permitted the other access to the other's individual accounts. As husband and wife they shared jointly in their property holdings. He had authority to sign his wife's name and make withdrawals or deposits as the need arose." (Matos Response to Pl.R. 3(g) Statement ¶ 9; *see also* Matos Pre-trial Narr. at 2.) These statements raise a genuine issue of material fact as to Matos' standing to challenge the forfeiture of these accounts.

### B. *Probable Cause*

■ In a civil forfeiture action, the government "must be able to show a nexus between the illegal conduct and the seized property." *United States v. Daccarett*, 6 F.3d 37, 56 (2d Cir.1993). "The government is not required to link a bank account to a particular illegal transaction, but it must have probable cause to connect the account

---

1. Section 984, which provides new guidelines for the forfeiture of fungible property, became effective October 28, 1992. *See* 18 U.S.C. § 984 (Supp. IV 1992). The original complaint was filed August 27, 1990 and so is not controlled by these new provisions. The court in *United States v. All Funds Presently on Deposit or Attempted to Be Deposited in Any Accounts Maintained at American Express Bank*, 832 F.Supp. 542 (E.D.N.Y.1993) stated that these provisions apply

retroactively. *Id.* at 562. However, the legislative history that the *All Funds* court relied on in interpreting § 984, H.R.Rep. 102–28, pt. 1, 102d Cong., 1st Sess. (1991), analyzed H.R. 26, which contained a provision for retroactive application. Section 984 contains no such provision, nor did the Conference Report to this statute discuss it. *See* H.Rpt. 102–1017, 102d Cong., 2d Sess. (1992), 1992 U.S.C.C.A.N. 3281, 3483.

to criminal activity." *Id.* Probable cause is established if the government is able to demonstrate that it has "reasonable grounds, more than mere suspicion, to believe that the property is subject to forfeiture." *Marine Midland Bank, N.A. v. United States,* 11 F.3d 1119, 1126 (2d Cir.1993); *see also United States v. Banco Cafetero Panama,* 797 F.2d 1154, 1160 (2d Cir.1986).

▮ To establish probable cause, the government relies primarily on Matos' own sworn statements and a careful examination of the records of each of the defendant accounts. Matos has admitted to laundering money by depositing the proceeds from the green card scheme in various bank accounts to avoid detection. (Matos Plea at 15–16.) He has also admitted in his deposition that he commingled his legitimate income from the INS with the proceeds of his green card scheme. (Matos Dep. at 53–54.) While his salary, combined with that of his wife, for the years 1986 through 1990 never exceeded $76,000 per year, Matos maintained seven to seventeen bank accounts during those years and made deposits in cash and cashiers checks totalling at least $521,650.63. (Matos Dep. at 15; Macchiaroli Aff. ¶ 33.)

In his deposition, Matos admitted that he deposited at least some of the proceeds of his green card scheme into each of the Six Accounts. (Matos Dep. 50, 54–57, 59–61, 64–66, 72–74, 77.) The bank statements for each of these accounts show a large number of deposits of cash and cashiers checks, as well as transfers from other accounts which had received a large number of deposits of cash or cashiers checks. (Macchiaroli Aff. ¶¶ 8, 12–14, 16–18, 20, 22–23, 25–26.) With respect to four of the Six Accounts, the government has demonstrated that the total of the deposits traceable to cash and cashiers checks exceeds the total of the amounts seized in the accounts. (*Id.* ¶¶ 12–14, 16–18, 20, 22–23.) With respect to the other two accounts, the government has shown significant deposits traceable to cash and cashiers checks. (*Id.* ¶¶ 8, 25–26.)

The government contends that the entire balance of each of the Six Accounts is subject to forfeiture even if some of the funds were derived from legitimate sources because the deposits of legitimate monies facilitated the money laundering by providing a cover for the illegitimate funds. This facilitation theory is premised on the fact that money laundering is often made more difficult to detect by the presence of legitimate funds in an account in which proceeds of illegal activities are also deposited.

Section 981 subjects to forfeiture any "property ... involved in" money laundering transactions. Courts have construed "property involved in" to authorize the forfeiture of bank account funds not directly traceable to a money laundering transaction, but which "facilitated" the transaction. *See United States v. Certain Funds on Deposit in Account No. 01-0-71417,* 769 F.Supp. 80, 84 (E.D.N.Y.1991) (hereinafter *"Certain Funds"*); *United States v. All Monies ($477,048.62) in Account No. 90-3617-3,* 754 F.Supp. 1467, 1472–73 (D.Hawaii 1991); *see also* 134 Cong.Rec. S17365 (daily ed. Nov. 10, 1988) ("the term 'property involved' is intended to include the money or other property being laundered ..., any commissions or fees paid to the launderer, and any property used to facilitate the laundering offense.") *But see United States v. $448,342.85,* 969 F.2d 474, 476 (7th Cir.1992) (rejecting this interpretation of the term "involved in".); *United States v. All Funds Presently on Deposit or Attempted to Be Deposited in Any Accounts Maintained at American Express Bank,* 832 F.Supp. 542 (E.D.N.Y.1993) (same).

In *Certain Funds* the government sought the forfeiture of several bank accounts, the contents of which consisted of proceeds of fraudulently obtained loans, as well as legitimate funds. Relying in part on the legislative history of § 981, Judge Spatt allowed the forfeiture of all funds in the accounts on the theory that the legitimate funds had been used to facilitate the money laundering offenses. The court stated:

[L]imiting the forfeiture of funds under these circumstances to the proceeds of the initial fraudulent activity would effectively undermine the purpose of the forfeiture statute. Criminal activity such as money laundering largely depends upon the use of legitimate monies to advance or facilitate

the scheme. It is precisely the commingling of tainted funds with legitimate money that facilitates the laundering and enables it to continue.

*Id.* at 84–85; *cf. United States v. All Funds on Deposit in Great Eastern Bank Account No. 11008117,* 804 F.Supp. 444, 447 (E.D.N.Y.1992) (rejecting facilitation theory in the context of currency reporting violations, but recognizing its logic in the context of money laundering violations, since "a common method of money laundering is the mixing of legitimate and illegitimate money.")

While the court in *Marine Midland Bank v. United States,* 1993 WL 158542 (S.D.N.Y. May 11, 1993), *adhered to on reconsideration,* 1993 WL 248796 (June 28, 1993), *aff'd in part, remanded in part,* 11 F.3d 1119 (2d Cir.1993), refused to authorize the forfeiture of the entire contents of an interbank account whose contents included proceeds of drug sales, *the court was careful to distinguish Certain Funds,* in which the bank accounts were "controlled by the perpetrators of an alleged fraud and allegedly used by them to launder the proceeds of such fraud." *Marine Midland,* 1993 WL 158542, at *7. In *Marine Midland,* the court emphasized that the government had made no allegations that the interbank account, which was used to process numerous financial instruments negotiated between Panama and the United States, was "controlled, nominally or effectively, by anyone with even a partially illegal purpose." *Id.*

The facilitation theory is appropriate in the present case where the government has demonstrated probable cause to believe that Matos established and controlled the Six Accounts, and commingled legitimate and illegitimate funds in these accounts, for the purpose of disguising the nature and source of the proceeds of his green card scheme. The fact that Matos opened numerous accounts, including the Six Accounts, during the same period he began his participation in the green card scheme strongly suggests that the Six Accounts were maintained solely for the purpose of disguising the source of the proceeds of his illegal activity. That the Six Accounts may also contain the proceeds of legitimate income does not change the result.

Any legitimate money in the Six Accounts would serve to further disguise the source of the illegitimate funds and to make the proceeds of the green card scheme more difficult to trace, and thereby facilitate Matos' money laundering scheme.

 The government contends that the contents of the First Virginia 31 Account are also forfeitable, pursuant to § 981, as property traceable to property involved in money laundering transactions. This account was opened by Matos' wife on May 9, 1990, the day after Matos was arrested for his participation in the green card scheme. (Macchiaroli ¶ 29.) This account received only two deposits, totalling $36,000, before it was seized. (*Id.* at ¶ 30.) Both of these deposits were made with funds withdrawn from one of the Six Accounts, (*Id.*), and thus would have been forfeited had they not been transferred. Therefore, the government has established probable cause to subject the contents of this account to forfeiture as well. The government has not argued that the eighth account, First Virginia 55, is property involved in, or traceable to property involved in, money laundering transactions.

## C. *Is There A Genuine Issue of Material Fact?*

 "Once the Government establishes probable cause, the burden shifts to the claimant to prove that the factual predicates for forfeiture under the statute have not been met.... Where the claimant fails to come forward with such evidence, 'summary judgment may be granted for the government solely upon the basis of its showing of probable cause.'" *United States v. All Funds on Deposit in Any Account at Certain Financial Institutions Held in the Names of Certain Individuals,* 767 F.Supp. 36, 40 (E.D.N.Y.1991) (quoting *United States v. 4492 S. Livonia Road,* 889 F.2d 1258, 1267–68 (2d Cir.1989)).

Under § 981, the claimant bears the risk of uncertainty in the forfeiture of fungible goods. Section 981, like § 881 of Title 21, incorporates the burden of proof rule that governs customs forfeitures. *See* 18 U.S.C. § 981(d); 21 U.S.C. § 881(d); 19 U.S.C. § 1615. The Second Circuit, in analyzing

this shared rule, has noted that "[n]o doubt uncertainty caused by the fungibility of money will make it difficult and in many cases impossible for claimants to satisfy this burden. But it is precisely the function of burden of proof rules to determine which party loses where evidence is lacking or at best ambiguous." *Banco Cafetero,* 797 F.2d at 1161.

█ Matos has tried to avoid summary judgment by stating that his guilty plea to the money laundering violations was coerced and that he in fact never attempted to disguise the source of the illegitimate funds. (Matos Response to Pl.R. 3(g) Stmt. ¶¶ 3–4.) Matos hopes that by contradicting his prior sworn statements, he can undermine the government's demonstration of probable cause and create a genuine issue of material fact for trial. However,

> [i]t is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment.... As we stated in *Perma Research:* "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."

*Mack v. United States,* 814 F.2d 120, 124–25 (2d Cir.1987) (quoting *Perma Research and Development Co. v. Singer Co.,* 410 F.2d 572, 578 (2d Cir.1969)); *see also Trans–Orient Marine v. Star Trading & Marine,* 925 F.2d 566, 572 (2d Cir.1991) ("The rule is well-settled in this circuit that a party may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing his own prior sworn testimony.") Thus, Matos cannot avoid summary judgment by simply renouncing his prior sworn statements to create a material issue of fact based on his own credibility.

█ Matos has also attempted to defeat summary judgment by raising an issue of fact as to whether all cash deposits to these accounts were proceeds of the green card scheme. Matos alleges that he received large undocumented cash gifts and inheri-

tances from his father and brother totalling at least $320,000. (Matos Pre-trial Narrative at 4; Matos Dep. at 42.) He asserts that he kept this money at home and, after marrying Barbara Matos in 1986, began depositing it into several different bank accounts in small amounts so as not to draw unnecessary attention to himself. (Matos Pre-trial Narrative at 5.) In addition, he claims that the total proceeds of his green card scheme did not exceed $188,000. (Matos Answer to Am. Compl.)

These statements alone, however, cannot defeat the government's motion for summary judgment. Matos has presented no information concerning which accounts received deposits of his alleged inheritance, and has stated in his deposition that he does not recall how much money he deposited from his green card scheme or his inheritance. (Matos Dep. at 65.) As stated earlier, any uncertainty regarding the actual source of the contents of these accounts is borne by the claimant. In any event, because Matos has admitted to depositing at least some of the proceeds of his green card scheme in each of the Six Accounts, all the funds in the Six Accounts are forfeitable under the facilitation theory, whether or not any legitimate funds were commingled with the green card proceeds. Thus, whether or not Matos inherited money from his family, or deposited any of this money in the Six Accounts, is not an issue of material fact and therefore does not defeat summary judgment on either the Six Accounts or the First Virginia 31 account.

For the foregoing reasons, the government's motion for partial summary judgment is granted against the contents of Citibank, N.A. account number 4630016195; Emigrant Savings Bank account number 29–3008339–5; Emigrant Savings Bank account number 29–3009142–2; Gruntal & Company account number 208–06070; First Virginia Bank account number 01055461; Riggs National Bank of Virginia account number 14–730–928; and First Virginia Bank account number 40594831. The government's motion for partial summary judgment against the contents of First Virginia Bank account number 7000143955 is denied. Plaintiff is directed to

submit his Response to the Government's 3(g) Statement in sworn and notarized form by April 22, 1994.

SO ORDERED.